UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-81130-CIV-HURLEY

**UNITED STATES OF AMERICA,**
    **plaintiff,**

vs.

**MYSTIC EQUESTRIAN LLC,
JACKIE Z. WOOLF and
DAVID GOLDSTEIN,**
    **defendants.**
_____/

**MEMORANDUM OPINION AND ORDER**

The United States of America, on behalf of the Internal Revenue Service ("the government"), initiated this suit as an action to foreclose a federal tax lien against certain property in Wellington, Florida in order to collect taxes owed by taxpayer John Dale Showell ("Showell"). The original complaint asserted a single foreclosure claim against Showell, the original owner of the Wellington property; Mystic Equestrian, LLC ("Mystic Equestrian"), the subsequent purchaser of the property; Fifth Third Mortgage Company, the financial institution which financed the Mystic Equestrian purchase, and Fifth Third Bank, the financial institution which issued a second mortgage on the property. The latter two financial institutions were later dropped as defendants and replaced by Lapi West LLC ("Lapi West"), the assignee of both mortgages and current owner of the property by way of deed in lieu of foreclosure.

Approximately a year after filing suit, the government settled the foreclosure claim against Lapi West,[1] resulting in dismissal of the foreclosure count against Lapi West, the current owner of

---

[1] At trial, counsel for the government indicated that the settlement with Lapi West resulted in only a partial payment toward satisfaction of the Showell tax lien.

1

the property, and all other defendants. At the same time, the government added a claim for conversion against Mystic Equestrian, and its individual managers, Jackie Woolf and David Goldstein, alleging that these defendants wrongfully converted proceeds of the real estate closing on the Wellington property allegedly earmarked for payment of Showell's outstanding federal tax lien.

A bench trial was conducted on the conversion claims on February 4, 2013. After consideration of the evidence, arguments of counsel, trial memoranda and the applicable law, the court now makes the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a).

**Findings of Fact**

1. On November 25, 2002, the United States of America made an assessment and demand on John Dale Showell IV and Pamela Showell for $128,533.00 in overdue federal income tax; $5,141.16 in penalties and $4820.49 in interest, all arising out of the taxpayers' failure to fully pay their 2001 federal income taxes.

2. The government filed tax liens against the Showells on March 6 and October 13, 2006. At the time of filing, John Dale Showell owned real property in Palm Beach County located at 13901 Pierson Road, Wellington, Florida 33414.

3. In 2006, Mr. Showell was facing foreclosure on the Wellington property. On October 27, 2006, Showell entered into a contract to sell the property to Mystic Equestrian, LLC, described on the contract as a "to be formed" entity. Jackie Woolf ("Woolf") and David Goldstein ("Goldstein") executed the purchase and sales agreement on behalf of Mystic Equestrian as its managing partners.

2

4. As reflected in an addendum to the sales contract executed by Showell and Woolf, Showell's sale of the Pierson Road property to "Mystic Equestrian LLC- to be formed" was part of a joint real estate development venture between Showell and three other participants, Jackie Woolf (managing partner), David Goldstein (managing partner) and Irving House (partner). As part of the deal, Showell agreed to give the to-be-formed Mystic Equestrian, LLC a $300,000 credit at closing, in exchange for which Showell was to receive and retain ownership of his home and the lot on which it was built within the property; a 25% interest in the Mystic Equestrian LLC partnership, and designation as listing agent for the sale of all subdivided lots and/or homes to be built by Mystic Equestrian LLC.

5. Prepared on a standard form bearing the "Illustrated Properties Real Estate, Inc." logo, the sales contract listed a $2,900,000.00 sales price for the Wellington property. Under paragraph no. 5 of this form, captioned "closing procedure; costs," at subparagraph 5(b), captioned "Seller Costs," the form recites the seller's obligation to pay certain recording taxes, followed by a line item for "other," in which the typewritten words "Federal Tax Lien" appear as an insert.

6. The closing on the Pierson Road property took place on November 22, 2006. Two days before the closing, on November 20, 2006, the closing agent, Absolute Title Company, sent the parties a draft HUD1 settlement state form outlining the expenses to be paid at closing. The draft HUD1, marked with handwritten notes, included a line item chargeable to seller for $194,000.00 payable to the United States Treasury as "payoff of IRS lien," as well as a separate line item entry for $19.20 as payment for "release IRS lien."

3

7. A day prior to closing, Fidelity National Title Insurance Company ("Fidelity") issued a title insurance commitment letter to Mystic Equestrian indicating that there were no existing tax liens against the property.

8. On the morning of the scheduled closing, November 22, 2006, Jackie Woolf telephoned Mr. Showell to relay the findings of Fidelity's title search. According to Mr. Woolf, whose testimony is credited here, during the course of that conversation Mr. Showell expressed his intent to assume sole responsibility for payment of the tax lien at a later time, and agreed to remove the tax lien payoff from the itemization of scheduled disbursements at closing.

9. The final HUD settlement statement signed at closing accordingly did not include a $194,000 line entry for "payoff of IRS lien," unlike the draft HUD form circulated two days earlier. The final form did, however, still contain the line item for payment of $19.20 for "release IRS lien." No funds were set aside at closing for payment of the Showell tax lien, and the deed to the property was exchanged without payment of the lien.

10. The final HUD statement provided for Mystic Equestrian to contribute $353,491.95 in cash to close the sale, and for Showell to receive $1,034,769.14 in sale proceeds.

11. At closing, Showell signed an "assignment of proceeds" authorizing the deduction of $353,491.95 from his sale proceeds in substitution of the "cash to close" from borrower recited on the settlement statement. At trial, Showell and Woolf consistently testified that this sum represented the cost of Mr. Showell's investment in Mystic Development, LLC as a 25% partner. In addition to this amount, Showell directed distribution of $101,000.00 in sale proceeds to Mystic Development, LLC, and an additional $255,000 in proceeds to

4

>   Showell's company, Gentle Spirits LLC.
>
> 12. On November 27, 2006, a warranty deed reflecting transfer of the property from Showell to Mystic Equestrian, LLC was recorded in the public records of Palm Beach County.
>
> 13. The government filed its initial action to foreclose on the Showell tax liens on October 11, 2011. On September 6, 2012, it added the conversion claims which are now the sole subject matter of the suit.   The government did not, at any time, issue a levy against funds from any defendant, nor did it otherwise take any action to enforce its liens until the filing of this lawsuit in October, 2011.

### Conclusions of Law

Conversion is an act of dominion wrongfully asserted over another's property which is inconsistent with the right of the owner and deprives the owner of the right of possession. *Warshall v. Price*, 629 So.2d 903, 904 (Fla. 4th DCA 1993); *City of Cars, Inc. v. Simms*, 526 So.2d 119, 120 (Fla. 5th DCA 1988); *United American Bank of Central Florida, Inc. v. Seligman,* 599 So.2d 1014 (Fla. 5th DCA 1992).   To succeed on a civil conversion claim under Florida law, the plaintiff must prove that by a preponderance of the evidence: (1) a right to the property; (2) a demand for the return of the property, and (3) defendants' refusal to return the property. *In re PSI Industries, Inc*. 306 B.R. 377 (Bankr. S. D. Fla. 2003).

Where the claim is for conversion of money, the plaintiff must establish additional elements: (i) specific and identifiable money; (ii) possession or an immediate right to possess that money; (iii) an unauthorized act which deprives plaintiff of that money, and (iv) a demand for return of the money and a refusal to do so. *Tambourine Comercio Internacional SA v. Solowsky,* 312 Fed. Appx 263, 2009 WL 378644 (11th Cir. 2009) (unpub); *U.S. v Bailey*, 288 F. Supp.2d 1261 (M.D. Fla.

2003), *aff'd* 419 F.3d 1208 (11th Cir. 2005); *Walker v Figarola*, 59 So.3d 188 (Fla. 3d DCA 2011), quoting *Gasparini v. Pordomingo*, 972 So.2d 1053, 1055 (Fla. 3d DCA 2008).   The identification requirement ensures that a fund of money actually exists to pay a specific debt owed and the claimant is not merely transforming a contract dispute into a conversion claim. *Tambourine Comercio, supra,* citing *Gasparini*.

   While the money does not necessarily need to be earmarked, there must be an obligation to keep intact or deliver the specific money in question, so that the money can be identified:

> Money is capable of identification where it is delivered at one time, by one act and in one mass, or where the deposit is special and the identical money is to be kept for the party making the deposit, or where the wrongful possession of such property is obtained.   An example is where a specific sum of money is to be held in constructive trust until the occurrence of a specified event.

*Belford Trucking Co. v. Zagar*, 243 So.2d 646, 648 (Fla. 4th DCA 1970).

   Thus, the threshold issue presented on the conversion claim is whether the IRS legally possessed or was legally entitled to any portion of the proceeds of sale disbursed at closing on the Pierson Road property.  "A federal tax lien … is not self-executing, and the IRS must take affirmative action … to enforce collection of the unpaid taxes."  *United States v. Boardwalk Motor Sports, Ltd*., 692 F.3d 378, 381 (5th Cir. 2012)(quoting *EC Term of Years Trust v. United States*, 550 U.S. 429, 430-31, 127 S. Ct. 1763, 167 L.Ed.2d 729 (2007)). "Until the IRS takes additional action, such as serving a levy or instituting foreclosure proceedings, it does not have the right to take possession of the property." *Id*., citing 26 U.S.C. § 6331(b).

   In this case, it is uncontested that the IRS did not serve a levy against funds from any defendant, either before or after closing on the Pierson Road property.   Without a valid levy, the IRS did not have legal possession of any portion of the proceeds from the sale of the Pierson Road

property. Because the IRS neither owned nor was entitled to immediate legal possession of the money allegedly converted, it fails to establish a cause of action for conversion.

The government seeks to avoid this result by arguing that a levy was unnecessary to stake its claim to the monies, where the terms of the sale agreement between Showell and Mystic Equestrian called for the seller to pay an indeterminate "federal tax lien" at closing, thus creating a contractual obligation between the parties to preserve a fund for payoff of the IRS tax lien at closing. This contractual provision does not, however, help the IRS avoid the ownership requirement. The parties did not violate this provision of the purchase and sale agreement, and wrongfully retain some escrowed funds contrary to the terms of an escrow agreement, as suggested by the government; rather, the uncontradicted evidence at trial establishes a mutual agreement to waive the Showell tax lien payoff provision in light of the clear title report issued by Fidelity, and a corresponding agreement to eliminate this item from the escrow funds identified at closing.

Thus, there was ultimately never an agreement between the parties to the sales transaction to escrow funds for pay off of the Showell tax lien, as evidenced by the final HUD statement which does not specifically identify any sum of money slated for disbursement as that of the government. Nor is there any evidence that the buyer, Mystic Equestrian, or its managers, Jackie Woolf or David Goldstein, were otherwise under any other contractual obligation to keep intact or hold any portion of the proceeds of sale which Showell disbursed to them at closing for the benefit of the government.

The undisputed evidence at trial established that Showell agreed to eliminate the tax lien pay off as a line item disbursement at closing, and assumed responsibility for paying off the lien at a later time, anticipating that it could be paid when the first lot in the planned subdivision was sold.

7

On this predicate, neither the closing agent, seller nor buyer was under an obligation to keep intact or hold any portion of the sale proceeds aside for payment of the Showell tax lien. In addition, Showell's written authorization to disburse a certain portion of the sales proceeds to Mystic Equestrian in the manner designated in the "Assignment of Proceeds" form executed at time of closing refers to the proceeds of the sale as money belonging to him ("proceeds of sale due me"), and directs designated disbursements to Mystic Equestrian and Gentle Spirits LLC.

In sum, there is no evidence of any obligation or fiduciary duty to keep money segregated and identifiable in a separate account, and no evidence of specific monies capable of identification deposited into an account designed to keep money segregated and identifiable, such as a trust or escrow account. Because the government fails to show by a preponderance of the evidence that any portion of the proceeds of sale at closing constituted a specific fund of money that rightfully belonged to the government, it cannot make the necessary proofs to assert a claim for conversion of money. *Battle v. Wachovia Bank, N.A.*, 2011 WL 1085579 (S.D. Fla. 2011); *Rosen v. Marlin,* 486 So.2d 623 (Fla. 3d DCA), *rev. den*., 494 So.2d 1151 (Fla. 1986). *See also Advanced Surgical Technologies, Inc. v. Automated Instruments*, *Inc.,* 777 F.2d 1504 (11th Cir. 1985) (failure to pay monies due under contract did not constitute conversion); *Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.,* 532 F. Supp. 2d 1350 (M.D. Fla. 2007).

## Conclusion

The government did not establish by a preponderance of the evidence a legal right to immediate possession of specific, identifiable monies belonging to it which were disbursed at closing, and therefore fails to establish an evidentiary basis to find defendants liable for conversion. The court shall accordingly enter final judgment on the conversion claims in favor of

the defendants and against the government by separate order of the court.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 19th day of February, 2013.

                                                                             Daniel T. K. Hurley
                                                                       United States District Judge

cc.   all counsel